IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CORTNEY BELL-PARNELL,<br><br>      Plaintiff,<br><br>  v.<br><br>MOUNT LAUREL POLICE DEPARTMENT, et. al.,<br><br>      Defendants. | Civil No. 20-20000(RMB/AMD)<br><br>**OPINION and ORDER** |

**BUMB**, United States District Judge:

    THIS MATTER comes before the Court upon the filing of an Amended Complaint by Plaintiff Cortney Bell-Parnell ("Plaintiff" or "Bell-Parnell"). Plaintiff originally filed his Complaint and application to proceed in forma pauperis ("IFP") in December 2020. [Docket No. 1.] Thereafter, the Court granted Plaintiff's IFP application and identified several deficiencies in his pro se Complaint. [Docket No. 5.] The Court then permitted Plaintiff to file an Amended Complaint, which he filed three weeks later. For the reasons stated herein, the Court will dismiss Plaintiff's claims against the Mount Laurel Police Department, the Mount Laurel Police Chief, the Mount Laurel Police Captain, and the Mount Laurel Police Lieutenant, and instruct the Clerk of Court to file the Amended Complaint for the remaining claims.

I.  **BACKGROUND**

In his amended pleading, Plaintiff alleges that: (1) Defendant Mount Laurel Police Department maintained an unconstitutional practice and failed to train its officers to not use excessive force [Id. at 5]; (2) An unnamed Mount Laurel Police Chief, Captain, and Lieutenant ("Supervisory Defendants") maintained an unconstitutional practice and failed to train its officers to not use excessive force [Id. at 6-8]; (3) Defendant Amaro (first name not provided), an officer with the Mount Laurel Police Department, choked Plaintiff and used force to takedown Plaintiff before handcuffing him [Id. at 9]; (4) Defendants William Baskay ("Baskay"), Matthew Dill ("Dill"), Joshua Treusch ("Treusch"), Christopher O'Prandy ("O'Prandy"), and Glen Horay ("Horay"), all officers with the Mount Laurel Police Department, physically beat Plaintiff while he was handcuffed and laying on the ground [Id. at 9-11]; and (5) Defendants Christian and Rutkowski (first names not provided), both officers with the Mount Laurel Police Department, failed to intervene and stop the other officers from physically beating Plaintiff. [Id. at 12-13.]

These claims arise from Plaintiff's November 18, 2019 arrest. According to the Amended Complaint, several Mount Laurel Police officers-- namely, Defendants Amaro, Baskay, Dill, Treusch, O'Prandy, and Horay-- approached Plaintiff at a Burlington County hotel. [Docket No. 6 at 15.] Although the Amended Complaint does

2

not clearly identify where this interaction began, Plaintiff's account suggests that it occurred outdoors, in front of the hotel.

Similarly, the Amended Complaint does not clearly explain how this encounter escalated. Plaintiff does, however, allege that Defendant Amaro choked Plaintiff and forcibly took him to the ground before handcuffing him. [Id. at 9.] More specifically, Plaintiff claims that Defendant Amaro "grabbed [P]laintiff and brutally yoked [him] around [his] neck and body and slammed [him] on the pavement," before forcibly handcuffing Plaintiff. [Id.] At this point, Plaintiff contends, Defendants Baskay, Dill, Treusch, O'Prandy, and Horay "approached [P]laintiff while [he] was laying handcuffed on the ground and punched and kicked [him] in the head, neck, body and legs." [Id. at 9–11.] According to Plaintiff, Defendants physically "beat [him] beyond recognition . . . to the point where he had . . . blood on his brain."[1] [Id. at 9.] Plaintiff further alleges that Defendants Christian and Rutowski "just stood by," failing to intervene and stop their fellow officers, resulting in more severe injuries. [Id. at 15.] Such injuries, Plaintiff claims, include "constant headaches, blurry vision, loss of

---

[1] The Court takes notice that Plaintiff has not alleged that he went to the hospital in the wake of this incident. Moreover, these are very serious allegations that Plaintiff has made under penalty of perjury. Although discovery will bear out the truth, for the purposes of the Complaint, this Court will assume that the facts as Plaintiff alleges are true. If, however, they are found to be fabricated, Plaintiff will be subject to prosecution.

3

concentration, anxiety towards police officers, injured cervical, injured lumbar, and injured leg." [Id. at 15–16.]

## II. LEGAL STANDARDS

A complaint filed by a litigant proceeding in forma pauperis is subject to sua sponte dismissal by the Court if the case is frivolous, malicious, or fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B). In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the pro se party. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (internal citation omitted). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F.App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)).

To survive a court's sua sponte screening, a complaint must allege "sufficient factual matter to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

III. **ANALYSIS**

Plaintiff asserts unique theories of liability against the Mount Laurel Police Department, the unnamed Supervisory Defendants, and the eight Individual Defendants respectively. Nevertheless, Plaintiff's claims arise under 42 U.S.C. § 1983. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

To establish a claim under § 1983, "a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). The Court begins its analysis of a plaintiff's § 1983 claims by identifying "the exact contours of the underlying

5

right said to have been violated," and determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998)).

Here, Plaintiff alleges that Defendants violated his rights under the Fourth Amendment of the United States Constitution. The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As relevant here, an "excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. . . . A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution." Groman v. Township of Manalapan, 47 F.3d 628, 633-34 (3d Cir. 1995).

### A. Bell-Parnell's Claims Against the Mount Laurel Police Department

The Court will dismiss Plaintiff's claims against the Mount Laurel Police Department. Plaintiff alleges that the Mount Laurel Police Department violated § 1983 by improperly training and supervising its officers [Docket No. 6 at 5], and maintaining an unconstitutional practice of discriminating against minorities,

6

with a propensity for violence towards those individuals. [Id. at 15.] But a plaintiff cannot assert a § 1983 claim against a police department because, although municipalities and townships may be liable under § 1983, a police department is "merely an arm of the Township" in which it is located. Padilla v. Township of Cherry Hill, 110 F.App'x 272, 278 (3d Cir. 2004), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009). Accordingly, the Court will dismiss Plaintiff's § 1983 claims against the Mount Laurel Police Department with prejudice.

### B. Bell-Parnell's Inferred Claims Against Mount Laurel Township

The Court cannot infer a sufficient § 1983 claim against the Mount Laurel Township. As noted above, courts construe pro se complaints liberally. See Erickson, 551 U.S. at 93–94. According to this principle, the Court will ordinarily interpret a pro se complaint to state a § 1983 claim against a municipality, even where a plaintiff failed to name that municipality as a defendant but has otherwise sufficiently alleged a § 1983 claim against an arm of that municipality. See Mikhaeil v. Santos, 646 F.App'x 158, 160 (3d Cir. 2016) (giving a pro se litigant the benefit of "construing [the] complaint liberally to allege a claim against [the municipality]" where the plaintiff named the police department as a defendant). The Court will not do so here, however,

7

because Plaintiff has not otherwise stated a valid § 1983 claim against Mount Laurel Township.

### 1. Unconstitutional Practice Claim

The Court will dismiss Plaintiff's unconstitutional practice claim because the Amended Complaint does not sufficiently identify the specific custom or policy that is allegedly unconstitutional. To assert a plausible claim under § 1983, a plaintiff "must identify [the] custom or policy and specify what exactly that custom or policy was" to survive a court's sua sponte dismissal screening. McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

Bell-Parnell has failed to identify a Mount Laurel Township custom or policy that would provide a basis for liability under § 1983. Instead, he baldly asserts that Mount Laurel maintains "an unconstitutional and unwritten" policy of discrimination and violence against minorities. [Docket No. 6 at 15.] But Plaintiff fails to set out any specific facts about the unconstitutional

policy that he alleges the Mount Laurel Police Department maintains. Such conclusory allegations will not suffice. See Iqbal, 556 U.S. at 678; Fowler, 578 F.3d at 210 (stating that a complaint must allege "sufficient factual matter to show that the claim is facially plausible").

Therefore, the Court finds that Plaintiff has failed to state a plausible unconstitutional practice claim against Mount Laurel Township.

### 2. Failure to Train Claim

Plaintiff's second claim against Mount Laurel Township-- that the Township failed to train its officers-- will likewise be dismissed. A policy, for purposes of § 1983, can arise from "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." Connick v. Thompson, 563 U.S. 51, 61 (2011). But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. (citing Oklahoma v. Tuttle, 471 U.S. 808, 822–23 (1985)). When a plaintiff alleges "a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).

Typically, "'[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" Id. (quoting Connick, 563 U.S. at 61). A "pattern of violations" will put a municipality on notice that a new program is necessary. Id. Without notice that a course of training is deficient, however, there can be no deliberate indifference. Id. In contrast, policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees . . . may establish . . . the 'deliberate indifference' necessary to trigger municipal liability." Bd. of Comm's v. Brown, 520 U.S. 397, 407 (1997). Finally, "'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." Thomas, 749 F.3d at 222 (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiff's Amended Complaint does not allege a pattern of constitutional violations ordinarily required to establish a failure to train claim. See Thomas, 749 F.3d at 222. Instead, Plaintiff's failure to train claim stems only from his own arrest.

The Supreme Court has recognized that a plaintiff may not always need to identify a pattern to sustain a failure to train claim:

> [I]n a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurrent situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice — namely, a violation of a specific constitutional or statutory right.

Bd. of Comm'rs, 520 U.S. at 409.

The Court finds that Plaintiff has not met this burden. Plaintiff has failed to allege sufficient facts to establish a plausible claim that Mount Laurel Township can be liable for failure to train its employees. Plaintiff asserts, in conclusory language, that Mount Laurel Township maintains an unconstitutional policy of failing to train police officers not to use excessive force. But Plaintiff does not offer any additional examples of officers violating citizens' rights, the Officers' allegedly insufficient training, or any facts that would support a finding of a deficiency in the Officers' training. Therefore, the Court finds that Plaintiff has failed to state a claim against Mount Laurel Township.

### C. **Bell-Parnell's Claims Against Supervisory Defendants**

Plaintiff asserts a supervisory liability claim under § 1983 against the Supervisory Defendants: the unnamed Mount Laurel Police Chief, Mount Laurel Police Captain, and Mount Laurel Police Lieutenant. [Docket No. 6 at 6–8.] The Court will dismiss Plaintiff's claims against the Supervisory Defendants because supervisory liability cannot be premised on a respondeat superior theory, as Plaintiff has alleged.

The Third Circuit has recognized "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates[:]" (1) liability based on an establishment of policies, practices or customs that directly caused the constitutional violation; and (2) personal liability based on the supervisor participating in the violation of Plaintiff's rights, directing others to violate Plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014); see also Doe v. N.J. Dep't of Corr., No. 14-5284, 2015 U.S. Dist. LEXIS 69569, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015).

Having reviewed Plaintiff's Amended Complaint, it appears that Plaintiff has simply named every Mount Laurel police officer who potentially had some supervisory responsibility over the officers on the scene of the incident which gives rise to this

cause of action. The Third Circuit has repeatedly held that a plaintiff cannot establish § 1983 liability on a respondeat superior theory. See, e.g., Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015). Yet Plaintiff's allegations attempt to bypass this limitation and hold some of the Supervisory Defendants liable solely for supervising the officers who were present at the scene.

Moreover, Plaintiff fails to make any factual allegations against these officers beyond arguing that they "should have known that [Individual Defendants] . . . of the M[ount] Laurel Police Department [were] unfit to serve." [Docket No. 6 at 6–8.] Plaintiff has neither alleged actions that directly caused the Individual Defendants' purported constitutional violations, nor alleged participation in or acquiescence to the Individual Defendants' actions towards Plaintiff.

Similar to his original Complaint [see Docket No. 1 at 4–5], Plaintiff merely recites the exact same bare and conclusory allegations-- that the Supervisory Defendants maintained an unconstitutional practice and failed to train subordinate officers-- against each Supervisory Defendant in his Amended Complaint. [See Docket No. 6 at 6–8.] Plaintiff has repeatedly failed to establish any connection between the Supervisory Defendants and the purported constitutional violations in this

13

action. As such, this Court finds that Plaintiff has failed to state a claim against Supervisory Defendants.[2]

### D. **Bell-Parnell's Claims Against the Individual Defendants**

#### 1. Defendant Amaro

Plaintiff alleges that Defendant Amaro "grabbed [P]laintiff and brutally yoked [him] around [his] neck and body and slammed [him] on the pavement," before forcibly handcuffing Plaintiff. [Docket No. 6 at 9.] Such an allegation, construed liberally, is sufficient to permit this claim to proceed because courts analyze allegations of injuries caused by police officers under the Fourth Amendment "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ."); Watson v. Oldroyd, No. 07-3175, 2007 U.S. Dist. LEXIS 57077, 2007 WL 2264906, at *4 (D.N.J. Aug. 3, 2007) ("[P]laintiff's allegation that he was beaten by police officers severely enough to require hospital treatment is sufficient to permit [a Fourth Amendment excessive force] claim to proceed.").

Accepting Plaintiff's allegations that he suffered an unprovoked beating while handcuffed on the ground by Defendant

---

[2] For the foregoing reasons, Plaintiff's claims sounding in conspiracy fail as well.

14

Amaro as true, Plaintiff's Fourth Amendment excessive force claim may proceed against Defendant Amaro.

### 2. Defendants Baskay, Dill, Treusch, O'Prandy, and Horay

Plaintiff alleges that, after Defendant Amaro handcuffed him and while he was laying on the ground, Defendants Baskay, Dill, Treusch, O'Prandy, and Horay "punched and kicked [him] in the head, neck, body and legs." [Docket No. 6 at 9-11.] For the same reasons discussed above with respect to Defendant Amaro, Plaintiff's Fourth Amendment excessive force claim may proceed against Defendants Baskay, Dill, Treusch, O'Prandy, and Horay.

### 3. Defendants Christian and Rutkowski

Plaintiff alleges that Defendants Christian and Rutowski violated his constitutional rights, per § 1983, by failing to intervene in the arresting officers' actions and by failing to train subordinate officers. [Docket No. 6 at 12-13.] Although a police officer has a "duty to take reasonable steps to protect a victim from another officer's use of excessive force," that officer is "only liable if there is a realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002). Here, Plaintiff has alleged that Defendants Christian and Rutkowski "had ample opportunity to [intervene]." [Docket No. 6 at 12-13.] A conclusory allegation of this kind cannot stand. As such,

Plaintiff's failure to intervene claims against Defendants Christian and Rutowski are dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, **IT IS** on this **8th** day of **July 2021**, hereby

**ORDERED** that the Amended Complaint [Docket No. 6] shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b), the Clerk of Court shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Mount Laurel Police Department; and it is further

**ORDERED** that the excessive force claims against Defendants Amaro, Baskay, Dill, Treusch, O'Prandy, and Horay, arising out of incidents alleged in the Complaint to have occurred on November 18, 2019 [Docket No. 6], may proceed; and it is further

**ORDERED** that the claims against Mount Laurel Police Department are dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the claims against the Supervisory Defendants and Defendants Christian and Rutkowski are dismissed without prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); Plaintiff is granted leave to file a Second Amended Complaint within 30 days of the date of entry of this Order, if he can allege additional facts in support of the dismissed claims; in

16

addition, Plaintiff's Second Amended Complaint, if he chooses to file one, will replace his original Complaint, and Plaintiff must therefore reallege the excessive force claims that the Court permitted to proceed, if Plaintiff wishes to proceed with those claims; and it is further

**ORDERED** that Plaintiff's Motion to Appoint Counsel [Docket No. 2] is **DENIED** without prejudice to its refiling; Plaintiff may refile such motion after Defendants respond to his Amended Complaint, and only if Plaintiff can identify specifically why counsel is necessary; and it is further

**ORDERED** that the Clerk of the Court shall serve Plaintiff with copies of this Order and the accompanying Opinion via regular mail.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE